# CHARLESTON.

FARQUHAR & CO., ETC. V. DEHAVEN *et al.*

Submitted September 9, 1911.   Decided April 2, 1912.

EXECUTION—*Judgment—Confession—Validity.*

> A judgment, purporting to be by confession of attorneys in fact, on a note, commonly called a judgment note, on warrant of attorney therein, purporting to empower and authorize the payees, or agent, or any prothonotary, or attorney of record, to appear for the makers and in their names, and confess judgment against them in favor of the payees, for the amount, with costs, and release of errors, entered by the clerk, in the clerk's office, in vacation, without process executed on defendant and declaration filed, is illegal and void on its face; and any execution issued thereon is also without warrant of law, illegal and void, and on motion of defendants should be quashed.

Error to Circuit Court, Berkeley County.

Action by Arthur B. Farquhar and others, partners, etc., against Charles E. Dehaven and others. Judgment for plaintiffs, and defendants bring error.

*Reversed, and Execution Quashed.*

*J. O. Henson* and *Allen B. Noll,* for plaintiffs in error.

*Martin & Seibert,* for defendants in error.

MILLER, JUDGE:

The judgment below to which this writ of error applies, denied the motion of defendants to quash the execution on a judgment in favor of plaintiffs, entered against them, in vacation, by the clerk of the circuit court on September 12, 1910.

The entire record of the judgment as presented here is as follows:

"This day came the defendants, by Martin & Seibert, their attorneys in fact, and say that they cannot gainsay the plaintiff's action against them, but that they are justly indebted to the said plaintiffs in the sum of $527.07 with interest thereon from this date and the costs of this action, on account of two certain notes, one dated August 30th, 1909, due six months after date,

and the other dated August 30th, 1909, due twelve months after date.

"It is therefore considered that the plaintiffs, Arthur B. Farquhar, Wm. E. Farquhar, and Frances Farquhar, general partners, trading and doing business as A. B. Farquhar Co. Ltd., do recover of and from the said defendants, Charles E. Dehaven and H. L. Dehaven, the sum of Five Hundred and Twenty Seven Dollars and Seven Cents. ($527.07), with interest from this date until paid, and their costs in this behalf expended. Teste: L. DeW. Gerhardt, Clerk Circuit Court of Berkeley County, West Virginia.

"Memo:

Said notes were filed with the said clerk upon the day of the entry of said order, and are in the words and figures following:"

The notes referred to, of which one is copied in the record, are judgment notes, in form like those in use in Pennsylvania, bearing six per cent. interest, and providing for a ten per cent. attorneys fee in addition to all other necessary expenses of collection after maturity. They also contain waiver of presentment and protest, homestead and exemption rights real and personal, and other rights, and also the following material provision: "And we do hereby empower and authorize the said A. B. Farquhar Co. Limited, or agent, or any prothonotary or attorney of any Court of Record to appear for us and in our name to confess judgment against us and in favor of said A. B. Farquhar Co. Limited, for the above named sum with costs of suit and release of all errors and without stay of execution after the maturity of this note."

The motion to quash assigned as the only ground therefor that the judgment is void, the clerk being without authority to enter the same upon a judgment note, as was done, without suit and service of process.

As both sides agree the question presented is one of first impression in this State. We have no statute, as has Pennsylvania and many other states, regulating the subject. In the decision we are called upon to render, we must have recourse to the rules and principles of the common law, in force here, and to our statute law, applicable, and to such judicial decisions and practices in Virginia, in force at the time of the separation, as are prop-

erly binding on us. It is pertinent to remark in this connection, that after nearly fifty years of judicial history in this State no case has been brought here involving this question, strong evidence, we think, that such notes, if at all, have never been in very general use in this commonwealth. And in most states where they are current the use of them has grown up under statutes authorizing them, and regulating the practice of employing them in commercial transactions. In the early Colonial history of Virginia, they seem to have had considerable recognition, but their use was abolished, and prohibited by penal statutes, enacted in 1744, and they did not again come into use until that statute was repealed by the Code of 1849; 5 Hen. Stat. 240, section 4 and 5; Sec. 12, ch. 76, Code 1819; Revisors Code, 826, note. This history is pretty thoroughly covered by the arguments of counsel, and the opinion of Judge Moncure in *Insurance Co.* v. *Barley's Admr.*, 16 Grat. 363, Anno. 144. We do not wish to be understood, however, as acquiescing in Judge Moncure's exposition of the common law on the subject, vouched in support of the early colonial practices so severely condemned by the statute of 1744. It is significant that this statute does not refer the practice condemned to the common law as its source. Section IV thereof recites: "And whereas a practice *has of late been introduced*, of taking bonds, commonly called judgment bonds, with condition, for the payment of money, and a general power to any attorney, to appear, and suffer judgment, etc. * * * *; which practice must be attended with ill consequences, debtors having no previous notice of the time and place of rendering such judgments, whereby they are deprived of an opportunity of making discounts appear against the bond, and are first put to unnecessary law charges, and then obliged to enter into expensive chancery suits for relief: To remedy whereof, &c."

The substantial features of section V, of this act, are embodied in section 12, chapter 76, Revised Code 1819, reading as follows: "If any Attorney, or other person practising as an Attorney, shall presume to appear under any power of attorney, *made before action brought,* for confessing or suffering judgment to pass by default or otherwise, for any defendant in any court of record within this Commonwealth, such Attorney shall, for every such offence, forfeit and pay fifteen hundred dollars, to

such defendant, for his own use, to be recovered, with costs, by action of debt or information, in any court of record; and, moreover, shall be liable to an action for damages, at the suit of the party grieved." It was this section which on recommendation of the Revisors, was omitted from the Code of 1849, repealing it, and by which repeal it is argued the common law was thereby restored. We find no justification, either in the history of the common law or elsewhere, for the argument presented here, that the repeal of the statute of 1744 by the Code of 1849, revived a local practice not known to the common law, and which the repealing act itself recites had "of late been introduced." That the common law so far as affected by Act of 1744, was restored by its repeal we concede, but farther than that we are unwilling to go.

In *Insurance Co. v. Barley's Admr., supra,* the latest Virginia case which can be said to have binding force upon us, suit had been brought, but it does not distinctly appear whether or not the process had been executed. The grounds assigned for the motion to set aside the judgment were: (1) That the power of attorney was executed before suit brought; (2) that an attorney in fact not an attorney at law could not confess judgment for his principal; (3) that if an attorney in fact could not confess judgment in open court, only the defendant himself could confess judgment in the clerk's office.

The only points of decision in that case, pertinent in this case, are covered by points 2, 3 and 4 of the syllabus, as follows: (2) "A power of attorney to confess a judgment may be executed before the action is brought." (3) "A judgment may be confessed either in court or in the clerk's office, by an attorney in fact, though the attorney is not a lawyer." (4) "When a statute changing the common law is repealed, the common law is restored to its former state." The fourth point we concede; and limited by the rules and principles of the common law, as modified by our statutes, section 43, chapter 125, and section 2, chapter 134, Code 1906, we do not know that any particular fault can be found with the general character of points 2 and 3. The Revisors of the Code of 1849, in a note, as a reason for omitting said section 12, as of no value, say: "We do not perceive any good reason why a power of attorney to confess judgment should not be lawful before a writ is sued out as well as after."

By gradual steps, however, the supreme court of appeals of Virginia, in subsequent decisions, have further innovated on the common law. In *Brockenbrough* v. *Brockenbrough,* 31 Grat. 580, 599, it is held, that a judgment rendered in court, upon the confession of the defendant in person, is not subject to collateral attack for lack of process. The judgment in that case, however, was not predicated on the Virginia statute—the same as our section 43, chapter 125, *supra*—permitting a defendant in vacation to confess a judgment or decree in the clerk's office. This Court held practically the same thing in *Hunter's Ex'rs.* v. *Stewart,* 23 W. Va. 549. But in the later case of *Shadrack's Admr.* v. *Woolfolk,* 32 Grat. 709, it was decided, that a judgment confessed by the defendant in the clerk's office in vacation is not the subject of collateral attack by other creditors. By *obiter dicta,* the court, however, ventured the opinion that if it plainly appeared that the judgment was confessed without a writ or previous process, it would not on that ground be void. Citing the *Brockenbrough Case,* which was a confession in court by the defendant in person. The court said, it perceived no substantial difference between the two cases. In *Saunders* v. *Lipscomb,* 90 Va. 647, relying on the two cases just referred to, and in *Manson & Shell* v. *Rawlings,* 112 Va. 384, 71 S. E. 564, the court went still farther, in holding in the first case, that a judgment by confession by an attorney in fact, in the latter, by defendant in person, in vacation, in the clerk's office, without process, was not subject to collateral attack, and it may be observed that the farthest any of these Virginia cases have gone, literally at least, is to hold such judgments not subject to collateral attack.

The case we have here, on the motion to quash, is one of collateral attack, and to sustain the motion and reverse the judgment below, we must hold the judgment void upon its face. Is it so void? As already indicated, the question must be answered practically upon the common law rules and principles. We have no statute in any way governing the subject, except section 43, chapter 125, of the Code, providing for a confession by defendant in vacation in the clerk's office. What then is the common law applicable to the case?

In 1 Black on Judgments, section 50, it is said: "All judgments rendered upon the confession of the defendant may be di-

vided into two classes: 1. Those entered in an action regularly commenced by the issuance and service of process. 2. Those entered upon the confession of the defendant, or his warrant of attorney, without the institution of an action. The former class of judgments are well known to the common law and must be tested and sustained by rules and principles existing independently of statute, while judgments of the latter class derive all their efficacy from positive law and must conform, in order to be valid, to all the requirements and formalities set up by the legislature. In the same section this writer further says: "Now judgments entered for the plaintiff upon the defendant's admission of the facts and law, as the same are known to the common law and exist independently of statutes, are of two varieties; first, judgment by *cognovit actionem,* and second, by confession *relicta verificatione.* In the former case the defendant, after service, instead of entering a plea, acknowledges and confesses that the plaintiff's cause of action is just and rightful. In the latter case, after pleading and before trial, the defendant both confesses the plaintiff's cause of action and withdraws or abandons his plea or other allegations, whereupon judgment is entered against him without proceeding to trial. In order to sustain a judgment of either of these sorts, it is essential that process, regularly issued, should have been served upon the defendant (though he may accept service with the same effect as if the writ had been served as it usually is) ; and an agreement in writing made out of court, authorizing the clerk to enter up such a judgment, will not sustain it, where there has been no appearance by the defendant." Blackstone says, on the subject of confession of judgment at common law: "And this happens, in the first place, where the defendant suffers judgment to go against him by default, or *nihil dicit;* as if he puts in no plea at all to the plaintiff's declaration: by confession or *cognovit actionem,* where he acknowledges the plaintiff's demand to be just: or by *non sum informatus,* when the defendant's attorney declares he has no instruction to say any thing in answer to the plaintiff, or in defense of his client; which is a species of judgment by default. If these, or any of them, happen in actions where the specific thing sued for is recovered, as in actions of debt for a sum certain, the judgment is absolutely complete. And therefore it is very usual, in order to strengthen a cred-

itor's security, for the debtor to execute a warrant of attorney to some attorney named by the creditor, empowering him to confess a judgment by either of the ways just now mentioned (by *nihil dicit, cognovit actionem,* or *non sum informatus*) in an action of debt to be brought by the creditor against the debtor for the specific sum due: which judgment, when confessed, is absolutely complete and binding. * * * * * *." 3 Blackstone Com. 396, 397. The great Virginia commentator, Mr. Minor, says on this subject, IV Minor's Inst. 726: "The defendant was always allowed to acknowledge the plaintiff's action, and confess a judgment for the amount claimed, or for such part thereof as he and the plaintiff could agree upon, provided it was done in open court. But a confession of judgment in the clerk's office was never contemplated by the common law, and can only take place in pursuance of the authority of some statute."

So according to these authorities the warrant of attorney, in use at common law, was confined to the confession of judgments, in the three ways enumerated by Blackstone, in a pending suit; that is by answering *nihil dicit, cognovit actionem,* or *non sum informatus.* And as Mr. Black says, judgments by confession of defendant or on his warrant of attorney, without the institution of an action, derive all their efficacy from positive or statute law. And judgment in the clerk's office, as Mr. Minor says, was never contemplated at the common law. Such warrant of attorney was usually given by the defendant to the plaintiff, by way of security, on compromising an action; and it authorized the attorney to whom it was directed to appear for the defendant, and to receive a declaration in an action to be brought against him, and thereupon confess the same in the manner already indicated. Tidd's New Pract., (Ed. 1837) 275; 1 Tidd's Pract. (Ed. 1828), pp. 590, 606; 2 Chitty Gen'l. Pract. 333.

In the case at bar, counsel for defendants in error say, they rely upon the fact that there is nothing in the record showing affirmatively that process was not served. The record, however, purports to be a complete transcript of all the proceedings which took place in the clerk's office in vacation, not at rules; and as no process is exhibited or referred to, we think we must necessarily say that no suit was begun by process, and that there was no

action pending in which at common law, a judgment on a warrant of attorney could have been confessed, in either of the ways authorized by the ancient practice. Mr. Freeman says, 2 Freeman on Judgments, section 547: "Judgments by confession are in no wise exempt from the rule applicable to other judgments, that to be valid they must be entered in a court having jurisdiction over the subject-matter of the action and the parties thereto. Though no adjudication is in fact required in entering a judgment of confession without action, yet it has all the qualities, incidents, and attributes of other judgments, and cannot be valid unless entered in a court which might have lawfully pronounced the same judgment in a contested action.' Where the law requires judgments to be signed by the judge, its provision extends to judgments by confession, and renders them void if not so signed." Looking to the literal terms of the power we see it authorizes appearance, but gives no specific authority to waive process, or to appear in the clerk's office, or waive the filing of the declaration; and limited by the rules and practices prevailing at common law, we must say no donee of the power had any authority to waive any of the rights of the plaintiff, to be sued and served with process, and to have a declaration filed on which judgment might lawfully be entered. Without jurisdiction thus acquired a judgment at common law on warrant of attorney would have been void. And even in those states, where it is otherwise provided by statute, the statute being in derogation of common law rights, the statutes are strictly construed. 23 Cyc. 699.

Let us see how this question has been viewed in the other states than Virginia. In Vermont, the supreme court says: "Judgments on confession without antecedent process have no basis other than the statute, and a full compliance with the statute is necessary to their validity, and the provisions authorizing them are to be strictly construed." *Mason* v. *Ward*, 80 Vt. 290, 67 Atl. 820. In Iowa, in response to the contention that the statute there, regulating confession of judgment, was merely cumulative of the common law remedy, the court said: "We do not think this position is correct. * * * * So far as we are advised it has never been the understanding of the profession nor of the business community in this State that warrants of attor-

ney to confess judgment had any place in our law. A confession of judgment pertains to the remedy. A party seeking to enforce here a contract made in another state must do so in accordance with the laws of this State. Parties cannot by contract made in another state engraft upon our procedure here remedies which our laws do not contemplate nor authorize." *Hamilton* v. *Schoenberger,* 47 Iowa 385. In New Jersey the entry of judgment by a justice on a judgment note without process or proof was declared illegal. That court said: "The defendant must be brought into court in the usual way, and the same proceeding had, as in other cases of written contracts." *Stretch* v. *Hancock,* (N. J. L.) 1 & 2 Pennington Rep. 151. In Tennessee, in *Carlin* v. *Taylor,* 75 Tenn. 666, the supreme court held, that no judgment could be confessed in that state by an attorney, on a judgment note like the one involved here. And in Kansas and Missouri, such notes are condemned, and the practice of employing them repudiated on principles of public policy, and as giving to the defendant no day in court, and as permitting the defendant to bargain away his right to be heard in court, contrary to public policy. *McCrairy* v. *Ware,* 6 Kans. App. 155, 158; *First Nat. Bank* v. *White,* 220 Mo. 717, 738. We are inclined to agree with the Missouri court in the case last cited, in which they say: "Such agreements are iniquitous to the uttermost and should be promptly condemned by the courts, until such time as they may receive express statutory recognition, as they have in some states."

Of course if a debtor has been summoned into court by process, and given a day and an opportunity to be heard, no good reason could be assigned why a judgment should not be pronounced against him at common law by confession on a warrant of an attorney. The fact that the Virginia court and this Court have recognized the right of the defendant by personal appearance, to submit himself without process to the jurisdiction of the court, and to confess a valid judgment against him, and that a proper construction of our statute, section 43, chapter 125, of the Code, might authorize a defendant to appear in person in the clerk's office and make like confession of judgment, we do not regard any justification for the proposition, that he may by warrant of attorney authorize appearance by and confession of judg-

ment, either in court or in the clerk's office, without process directed and regularly served upon him. It is contended, however, that the old legal maxim, *qui facit per alium, facit per se,* is as applicable here as in other cases. We do not think so. Strong reasons exist, as we have shown, for denying its application, when holders of contracts of this character seek the aid of the courts and of their execution process to enforce them, defendant having had no day in court or opportunity to be heard. We need not say in this case that a debtor may not by proper power of attorney duly executed, authorize another to appear in court, and by proper endorsement upon the writ waive service of process, and confess judgment. But we do not wish to be understood as approving or intending to countenance the practice of employing in this state commercial paper of the character here involved. Such paper has heretofore had little if any currency here. If the practice is adopted into this state it ought to be, we think, by act of the Legislature, with all proper safeguards thrown around it, to prevent fraud and imposition. The policy of our law is, that no man shall suffer judgment at the hands of our courts without proper process and a day to be heard. To give currency to such paper by judicial pronouncement would be to open the door to fraud and imposition, and to subject the people to wrongs and injuries not heretofore contemplated. This we are unwilling to do.

These considerations lead us to conclude that a judgment by confession in the clerk's office, on warrant of attorney, without process regularly issued and served upon or accepted by defendant is void on its face. We therefore reverse the judgment below, quash the execution, and award the defendants costs here and in the court below, incurred on said motion.

*Affirmed.*

ROBINSON, JUDGE, *(dissenting):*

The judgment on which the execution issued is regular and valid on its face. The execution could not be quashed. The order overruling the motion to quash the execution is right and should be affirmed. The only record on which the circuit court could act in determining that motion does not show the judgment void. As far as appears from the record leading to the judg-

ment, that judgment is sound. It purports to have been entered in a pending action. The court could not say the defendants were not served with process and that no declaration was filed, even if those things were necessary as to a judgment by confession. But the judgment itself shows that the court had jurisdiction to enter it. The defendants appeared by attorneys-in-fact and answered the action; so says the record. Service of process has never heretofore been considered necessary as to a party who appears. We have always understood that a party could appear, waive a declaration, release errors, and do many other things toward the entry of a judgment against him. And we are sure that it has heretofore been well established that one could appear to an action by an attorney-in-fact and do all that he could in person. The record does not show that the defendants appeared in this action by attorneys-in-fact acting under the so-called judgment notes. For all the court could see in considering the motion to quash the execution, the attorneys-in-fact appeared and confessed for defendant under a valid power of attorney to do so. The power of attorney was not made a part of the record. It can not be assumed that an invalid power of attorney was recognized in the entry of judgment. The presumption is otherwise.

That the judgment was entered in the clerk's office in vacation, does not affect its verity on collateral attack. It has the same dignity in this respect as a judgment entered in court. The statute expressly says so. Code 1906, chapter 125, section 43. "Whether a judgment be the act of the court, or be entered up by the clerk under the statute, the effect is the same; in either case it is the act of the law, and until reversed by the court which rendered it, or by a superior tribunal, it imports absolute verity, and is as effectual and binding as if pronounced upon a trial upon its merits." 8 Enc. Dig. Va. & W. Va. 547.

The judgment has been overthrown on a collateral attack by bringing in matters that are not in the record. An issue of matters outside the record on which the judgment rests, made up on a motion to quash the execution, has been resorted to in finding the judgment to be void. Such matters could only be resorted to on a direct attack of the judgment. The circuit court well knew that it could not quash an execution that rested on a judg-

ment fully purporting jurisdiction and validity—that the verity of such judgment could not be impeached on collateral attack. "Where a court of general jurisdiction acts within the scope of its general powers, its judgments will be presumed to be in accordance with its jurisdiction and can not be collaterally impeached unless the record discloses a want of jurisdiction." See the cases cited in 8 Enc. Dig. Va. & W. Va. 545.

If the case of direct attack dealt with by the majority opinion were properly before us, we would be of opinion that common law principles and Virginia law do not condemn the judgment as void, unless it be on the ground that the power of attorney in the notes is so sweeping and general, so full of partiality to the creditor, as to be void. But this moot question we shall not decide. We may suggest that the power of attorney in the notes is not of the definite and particular character of those powers of attorneys to confess judgments long recognized in Virginia. However, if the power of attorney is valid, no service of process on defendants was necessary when those persons authorized by it to appear to the action in behalf of defendants did so appear. Yet the majority opinion is rested on the want of process. Throughout it that ground is relied on; the concluding paragraph emphasizes that ground. Why is service of process necessary if the warrant of attorney is valid? If it is good, and the attorneys constituted by it to appear to the action do appear thereto pursuant to that authority, the defendants that made them attorneys-in-fact for that purpose have thereby entered an appearance. The defendants then have notice of the suit through their attorneys-in-fact. The court takes jurisdiction of the defendants by their appearance. When the attorneys-in-fact appear, that appearance is one by the defendants who authorized those attorneys-in-fact to make it. Surely, the want of direct service of process is not a sound reason for the majority opinion, if the power of attorney is valid. That opinion only makes it invalid because no process was served on the defendants who gave it.

The reasoning of the opinion virtually leads to this: A is detained in California as an invalid. He hears from home that a creditor is threatening suit. He has no defense and deems it to his best interest that judgment be entered against him. He

sends a warrant of attorney to B to appear to an action instituted by the creditor and to confess judgment in his behalf. B can not do so because no service of process can be made on A. The creditor can not take judgment though A offers to appear and confess it by duly authorized proxy. If this is sound, it is strange that recognition and practise have long been otherwise.

There was just one question to be answered in the assumed case dealt with by the majority: Is the power of attorney a valid one? If it is valid, if it gave the authority it purports to give, a judgment could be confessed under it on behalf of defendants in an action, even in the clerk's office, and that confession would be a waiver or release of errors. 3 Enc. Dig. Va. & W. Va. 70, 74, 75.

BRANNON, PRESIDENT: I concur in the above dissent.